**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| VICOR CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>DELTA ELECTRONICS, INC., DELTA ELECTRONICS (AMERICAS) LTD. LUXSHARE PRECISION INDUSTRY CO., LTD. DONGGUAN LUXSHARE TECHNOLOGY CO., LTD. a/k/a LUXSHARE-TECH, INFINEON TECHNOLOGIES AG, QUANTA COMPUTER INC., QUANTA CLOUD TECHNOLOGY INC., CELESTICA INC., HON HAI PRECISION INDUSTRY CO. LTD. d/b/a FOXCONN TECHNOLOGY GROUP, FOXCONN INDUSTRIAL INTERNET CO. LTD., INGRASYS TECHNOLOGY INC.,<br><br>Defendants. | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT FOR PATENT INFRINGEMENT**

This is an action for patent infringement in which Vicor Corporation makes the following allegations against Defendants Delta Electronics, Inc. and Delta Electronics (Americas) Ltd. (together, "Delta"); Luxshare Precision Industry Co., Ltd., Dongguan Luxshare Technology Co., Ltd. a/k/a Luxshare-Tech (together, "Luxshare"); Infineon Technologies AG ("Infineon"); Quanta Computer Inc. and Quanta Cloud Technology Inc. (together, "Quanta"); Celestica Inc. ("Celestica"); and Hon Hai Precision Industry Co. Ltd. d/b/a Foxconn Technology Group, Foxconn Industrial Internet Co. Ltd., and Ingrasys Technology Inc. (together, "Foxconn"); each of whom is a manufacturer and/or distributor who, without authority, makes, imports, uses, offers

for sale, and/or sells in the United States certain vertical power delivery systems, components thereof, and computing systems containing the same that infringe U.S. Patent No. 10,903,734. These vertical power delivery systems, components thereof, and computing systems containing the same are used for cutting-edge AI computing developments.

## PARTIES

### Vicor

1. Plaintiff Vicor Corporation ("Plaintiff" or "Vicor") is a Delaware corporation with its principal place of business at 25 Frontage Road, Andover, MA 01810. Vicor is a NASDAQ-listed public company that was founded in 1981 by Dr. Patrizio Vinciarelli in Massachusetts. Dr. Vinciarelli, the lead inventor of the patent asserted in this Complaint, remains Vicor's CEO to this day. Headquartered in the United States, Vicor is a leading provider of high-performance power modules and systems for use in advanced computing applications—like powering advanced processors in server motherboards, artificial intelligence accelerator cards and systems, and server rack power conversion for use in datacenters. Vicor is the owner of all rights, title, and interest in and to the Asserted Patent, U.S. Patent No. 10,903,734 ("the '734 Patent").

### Delta Defendants

2. On information and belief, Defendant Delta Electronics, Inc. is organized under the laws of Taiwan with its principal place of business at 186, Ruey Kuang Road, Neihu District, Taipei 114501, Taiwan, and is the parent corporation of the Delta Electronics brand. Delta Electronics, Inc. describes itself on its website as "a global leader in power and thermal management technologies." *About Delta*, Delta Electronics, https://www.deltaww.com/en-US/about/Delta-Profile [https://perma.cc/D89A-PVGP] (last visited Aug. 31, 2026).

3. On information and belief, Delta Electronics, Inc. makes, uses, offers to sell, and/or

sells within the United States, and/or imports into the United States, the accused Delta products. On information and belief, Delta Electronics, Inc. does business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas, including Delta Electronics (Americas) Ltd.

4. Delta Electronics, Inc. has many foreign and domestic subsidiaries that are wholly owned and/or controlled by Delta Electronics, Inc. *See Delta Electronics, Inc. and Subsidiaries Consolidated Financial Statements and Independent Auditors' Review Report, June 30, 2026 and 2025* ("Delta Financial Report"), 16–27 (2026) https://filecenter.deltaww.com/ir/download/financial_report/Q22026_eng_Consolidated%20Financial%20Report.pdf [https://perma.cc/8BW6-9KDL] (last visited Sept. 3, 2026). Delta Electronics, Inc. exercises a substantial degree of control over these entities, including by setting an employee code of conduct for "all members of Delta and subsidiaries including directors, supervisors, managers, and employees." *Delta Electronics, Inc. 2024 Annual Report*, 145 (March 31, 2025) https://filecenter.deltaww.com/IR/download/annual_report/2024annual.pdf [https://perma.cc/S489-SALL] (last visited Sept. 3, 2026). Delta Electronics, Inc.'s business benefits from directing and controlling these subsidiaries and affiliates' conduct with respect to the Delta brand and Delta products, including the Delta products accused here. The Complaint uses "Delta" and "Delta Defendants" to refer collectively to Delta Electronics, Inc. and its named subsidiary Delta Electronics (Americas) Ltd., described further below.

5. On information and belief, Defendant Delta Electronics (Americas) Ltd. is organized under the laws of California and has its principal place of business at 46101 Fremont Blvd., Fremont, CA 94538. Delta Electronics (Americas) Ltd. also has a physical, regular, and established place of business in Plano, Texas, where it hires on-site employees. *See*

https://www.linkedin.com/jobs/search/?currentJobId=4459057883&geoId=100517351&keywords=delta%20electronics&origin=JOB_SEARCH_PAGE_SEARCH_BUTTON&refresh=true (last visited Sept. 3, 2026). Delta Electronics (Americas) Ltd. is a wholly owned subsidiary of Delta Electronics, Inc. Delta Financial Report, *supra*, at 16, 20 (Delta Electronics (Americas) Ltd. is wholly owned by Delta America Ltd., which in turn is wholly owned by Delta Electronics, Inc. and Delta International Holding Limited B.V. (DIH), the latter of which is itself wholly owned by Delta Electronics, Inc..

6. On information and belief, the Delta Defendants do business themselves, and/or through their subsidiaries, affiliates, and agents in the State of Texas and the Eastern District of Texas, including through Delta's wholly owned subsidiary Delta Electronics (USA) Inc., which has a Plano location at 601 Data Drive, Plano, TX 75075. *See Global Operations*, Delta, https://www.deltaww.com/en-US/company/global-operations#Americas [https://perma.cc/2VNR-VNJG] (Sept. 3, 2026). On information and belief, Delta has many employees based in, and does business across, the State of Texas, including at these locations.

7. On information and belief, each Delta Defendant makes, uses, offers to sell, sells, and/or imports in/into the State of Texas and the Eastern District of Texas certain vertical power delivery systems, components thereof, and/or computing systems containing the same that infringe the '734 Patent, contributes to such patent infringement by making, using, selling, offering to sell within the United States, or importing into the United States infringing products that incorporate or constitute a material part of the inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas, as described further herein.

8. Further, on information and belief, the Delta Defendants may be served with

process in the United States through their domestic subsidiaries because these entities operate as the alter ego of the Delta Defendants and/or are the general managers or agents of the same within the United States.

**Luxshare Defendants**

9. Luxshare Precision Industry Co., Ltd. ("Luxshare-ICT") is a Chinese public company with its principal place of business at 313 Beihuan Road, Qingxi Town, Dongguan, Guangdong, 523642, China. Luxshare Precision Industry describes itself as "providing integrated intelligent solutions, parts, modules and systems for enterprise communication products…consumer electronic products…and automobile systems." *About Us*, Luxshare-ICT, https://www.luxshare-ict.com/en/about/company-profile.html [https://perma.cc/M62F-R3NE] (last visited Sept. 3, 2026). The company publicly positions itself as part of the artificial intelligence "frontier" by providing "enterprise-level solutions of high-speed connectivity, thermal management, and power management." *Smart City Connectivity*, Luxshare-ICT, https://www.luxshare-ict.com/en/solution/data-communicate/data-centers.html [https://perma.cc/7WVE-LFXU] (last visited Dec. 26, 2025). These power management solutions include the accused products relevant to this case.

10. On information and belief, Luxshare-ICT has multiple subsidiaries over which it exercises a substantial degree of control.

11. One of these, Dongguan Luxshare Technology Co., Ltd. a/k/a Luxshare-Tech, is also a Defendant in this case. On information and belief, Dongguan Luxshare Technology Co., Ltd. a/k/a Luxshare-Tech ("Luxshare-Tech") is a Chinese company with the Guangdong business address 8th Floor, Digital Technology Industrial Park, CIMC Industrial City, No. 1 Yile Road, Songshan Lake High-Tech Zone, Dongguan City, Guangdong, PRC. It provides a wide variety of

data center and power solutions. *See Products*, LuxshareTech, https://en.luxshare-tech.com/products.html [https://perma.cc/2LNF-Z9ZT] (last visited Sept. 8, 2026).

12. The Complaint uses “Luxshare” and “Luxshare Defendants” to refer collectively to Luxshare Precision Industry Co., Ltd. and its named subsidiary.

13. On information and belief, each Luxshare Defendant makes, uses, offers to sell, sells, and/or imports in/into the State of Texas and/or the Eastern District of Texas certain vertical power delivery systems, components thereof, and/or computing systems containing the same that infringe the ’734 Patent, contributes to such patent infringement by making, using, selling, offering to sell within the United States, or importing into the United States infringing products that incorporate or constitute a material part of the inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas, as described further herein.

**<u>Infineon Defendant</u>**

14. On information and belief, Defendant Infineon Technologies AG is organized under the laws of Germany with its principal place of business at Am Campeon 1-15, 85579 Neubiberg, Germany. Infineon Technologies AG describes itself on its website as “the clear no.1 in power semiconductors and a leading power systems innovator.” *Company description*, Infineon Technologies AG, https://www.infineon.com/about/company [https://perma.cc/X5BK-P7ZT] (last visited Sept. 5, 2026). On information and belief, Infineon Technologies AG makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, the accused Infineon products. On information and belief, Infineon Technologies AG does business itself, or through its subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas.

15. Infineon Technologies AG has a large network of foreign and domestic subsidiaries that are wholly owned (directly or indirectly) and/or controlled by Infineon Technologies AG. *See Annual Report 2025*, Infineon Technologies AG, 169-71 https://www.infineon.com/assets/row/public/documents/corporate/investors/annual-reports/2025/2025-annual-report-v01-00-en.pdf [https://perma.cc/TE4B-CAXJ] (last visited Sept. 5, 2026). Infineon Technologies AG exercises a substantial degree of control over these entities. This includes setting employment and personnel policies and Business Conduct Guidelines that are "mandatory for . . . all employees worldwide." *Statement on Corporate Governance for the 2025 Fiscal Year*, Infineon Technologies AG, 2, https://www.infineon.com/assets/row/public/documents/corporate/investors/corporate-governance/2025/2025-infineon-statement-on-corporate-governance-2025-v01-00-en.pdf [https://perma.cc/U2T3-8PVN] (last visited Sept. 5, 2026).

16. On information and belief, Infineon does business itself, and/or through its subsidiaries, affiliates, and agents in the State of Texas, including through Infineon Technologies Americas Corp., which conducts significant business at 5204 East Ben White Boulevard, Austin, Texas 78741 and at 9720 Cypresswood Dr. Ste 390 Houston, TX 77070. *Contact us*, Infineon, https://www.infineon.com/contact-us [https://perma.cc/2888-2XPY] (last accessed Sept. 8, 2026).

17. On information and belief, Infineon makes, uses, offers to sell, sells, and/or imports in/into the State of Texas and the Eastern District of Texas certain vertical power delivery systems, components thereof, and/or computing systems that infringe the '734 Patent, contributes to such patent infringement by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the

inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas, as described further herein.

**Quanta Defendants**

18. On information and belief, Quanta Computer Inc. is organized under the laws of Taiwan with its principal place of business at No. 211, Wenhua 2nd Rd., Guishan Dist., Taoyuan City 333, Taiwan, and has as its wholly owned subsidiary Quanta Cloud Technology Inc., which is organized under the laws of Taiwan and has its principal place of business at 1F, No. 211 Wenhua 2nd Rd., Guishan Dist., Taoyuan City 33377, Taiwan. The Complaint refers collectively to Quanta Computer Inc. and Quanta Cloud Technology Inc. as "Quanta."

19. Quanta Computer Inc. describes itself as "a leading solution provider in cloud computing" with global impact. *Company Profile*, Quanta Computer, https://www.quantatw.com/quanta/english/about/company.aspx [https://perma.cc/GK9R-C7LU] (last visited Sept. 5, 2026). Quanta Computer Inc.'s computer server products "continue to evolve toward AI computing and high performance architectures." *Quanta Computer Inc. Annual Report 2025*, 108, https://www.quantatw.com/quanta/english/investment/annualreports.aspx.

20. Quanta Computer Inc. imports the Accused Products directly into the United States for distribution and sale. Quanta Computer, Inc. explains that its "customer base is highly internationalized, with the Americas serving as our core market." *Id.* at 116. On information and belief, the Quanta Defendants exercise a substantial degree of control over their U.S.-based subsidiaries and affiliates, including with respect to the manufacture, importation, sale, marketing, and branding of the Accused Products. On information and belief, the Quanta Defendants also enjoy substantial business advantages by directing and controlling these subsidiaries and affiliates' conduct with respect to the Quanta brand and Quanta products, including the Accused Products.

On information and belief, Quanta Computer Inc. makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States the Accused Products, including directly and through or in concert with its affiliates and subsidiaries.

21. Quanta Computer Inc. launched Defendant Quanta Cloud Technology as a subsidiary in 2012 "to offer a full spectrum of off-the-shelf products and services directly to cloud service providers, enterprises and SMBs." Company Overview, *Quanta Cloud Technology*, https://www.qct.io/Company-AboutQCT/index (last visited Sept. 5, 2026). In doing so, Quanta Cloud Technology "effectively inherited the Quanta [Computer, Inc.] hyperscale 'DNA' and its 14-year heritage of leadership within the datacenter hardware space." *Id*. Quanta Computer, Inc. retains full ownership of Quanta Cloud Technology Inc. to this day. *See Quanta Computer, Inc. Annual Report 2025*, at 89. Quanta Cloud Technology Inc.'s product lines include "servers, storage, switches, integrated racks." Company Overview, *Quanta Cloud Technology*, https://www.qct.io/Company-AboutQCT/index (last visited Sept. 5, 2026). Quanta Cloud Technology Inc. also uses Quanta Computer Inc.'s "engineering, manufacturing, distribution, supply chain support and rack assembly" via "the Quanta global network" to further disseminate Quanta products, including the Accused Products. *Id*. On information and belief, Quanta Cloud Technology Inc makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States the Accused Products, including directly and through or in concert with its affiliates and subsidiaries.

22. On information and belief, Quanta makes, uses, offers to sell, and/or sells within the State of Texas and the Eastern District of Texas vertical power delivery systems, components thereof, and/or computing systems containing the same that infringe the '734 Patent ("the Accused Products"), contributes to such patent infringement by making, using, selling, offering to sell

within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas, as described further herein.

23. Further, on information and belief, the Quanta Defendants may be served with process in the United States through their domestic subsidiaries because these entities operate as the alter ego of the Quanta Defendants and/or are the general managers or agents of the same within the United States.

**Celestica Defendant**

24. Celestica, Inc. ("Celestica") is a Canadian company with its principal place of business at 5140 Yonge Street, Suite 1900 Toronto, Ontario, Canada. Celestica "enables critical data center infrastructure for AI, cloud, and hybrid cloud and advances technologies in high-growth markets." *Celestica is Leading and Accelerating Market Advancements*, https://www.celestica.com/about-us/who-we-are [https://perma.cc/45AK-2WPW] (last visited Sept. 5, 2026).

25. On information and belief, Celestica makes, uses, offers to sell, and/or sells within the State of Texas and the Eastern District of Texas vertical power delivery systems, components thereof, and/or computing systems containing the same that infringe the '734 Patent ("the Accused Products"), contributes to such patent infringement by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas, as described further herein.

26. Further, on information and belief, the Celestica Defendant may be served with process in the United States through its domestic locations because these entities operate as the alter ego of the Celestica Defendant and/or are the general managers or agents of the same within the United States.

**Foxconn Defendants**

27. On information and belief, Defendant Hon Hai Precision Industry Co. Ltd. d/b/a Foxconn Technology Group is organized under the laws of Taiwan with its principal place of business at No. 2, Zihyou St., Tucheng Dist., New Taipei City 236, and has as its subsidiaries Defendant Foxconn Industrial Internet Co. Ltd., which is organized under the laws of China with its principal place of business at 2F C1 Foxconn Technology Park 2 Donghuan 2 Road Longhua, Shenzhen, 518109 China, and Defendant Ingrasys Technology Inc., which is organized under the laws of Taiwan with its principal place of business at 5F., No. 1188, Nanqing Rd., Luzhu Dist., Taoyuan City, Taiwan.

28. The Complaint refers collectively to Hon Hai Precision Industry Co. Ltd. d/b/a Foxconn Technology Group, Foxconn Industrial Internet Co. Ltd., and Ingrasys Technology Inc. as "Foxconn" or the "Foxconn Defendants." Hon Hai's business includes four segments: "Cloud and Networking Products, Smart Consumer Electronics, Computing Products, and Components and Other Products." *Hon Hai Precision Industry Co., Ltd., 2025 Annual Report*, 108, https://image.honhai.com/upload/202605/financy_by_year/2025_Annual_Report_20260523_7728.pdf [https://perma.cc/3Q5G-FTUH] (last accessed Sept. 5, 2026). "[A]rtificial intelligence is currently the Company's core growth driver." *Id.*

29. Defendant Foxconn Industrial Internet Co. Ltd., is a Foxconn subsidiary that describes itself as "a world-leading provider of smart manufacturing integration solutions,

leveraging cutting-edge AI technologies." *Foxconn Industrial Internet LinkedIn Profile*, https://www.linkedin.com/company/%E5%AF%8C%E5%A3%AB%E5%BA%B7%E5%B7%A5%E4%B8%9A%E4%BA%92%E8%81%94%E7%BD%91%E8%82%A1%E4%BB%BD%E6%9C%89%E9%99%90%E5%85%AC%E5%8F%B8/ (last visited Sept. 5, 2026). On information and belief, Foxconn Industrial Internet Co. Ltd. manufactures, distributes, and/or imports the accused Foxconn products to/in the United States, including via or in concert with other Foxconn subsidiaries and affiliates.

30. Defendant Ingrasys Technology Inc. is also a Foxconn Technology Group subsidiary. It focuses on creating "the greatest cloud computing systems." *About Ingrasys*, https://www.ingrasys.com/company/about/ [https://perma.cc/M69E-HPM9] (last visited Sept. 5, 2026). Ingrasys Technology Inc. also has locations throughout the United States, including in Texas, which, on information and belief, it uses to advertise, offer for sale, sell and/or distribute the accused Foxconn products in Texas. *Id.*

31. On information and belief, Foxconn distributes, imports, offers for sale, and/or sells in the State of Texas and the Eastern District of Texas certain products that infringe the '734 Patent, contributes to such patent infringement by making, using, selling, offering to sell within the United States, or importing into the United States power modules and power systems and/or products containing the same that incorporate or constitute a material part of the inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas, as described further herein.

32. On information and belief, the Foxconn Defendants may be served with process in the United States through their domestic subsidiaries because these entities operate as the alter ego of the Foxconn Defendants and/or are the general managers or agents of the same within the United

States.

## JURISDICTION AND VENUE

33. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

34. Defendants conduct business on a systematic and continuous basis within the United States, including the State of Texas and this judicial district. To the extent that any Defendant does not have minimum contacts with the State of Texas, that Defendant does not have minimum contacts with any single state, but does with the United States as a whole, such as that the exercise of jurisdiction is appropriate pursuant to Fed. R. Civ. P. 4(k)(2).

35. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)–(c) and 1400(b) either because, for each Defendant, (A) the Defendant is a foreign corporation who is not a resident of the United States, and thus is subject to venue in any judicial district, including this District; or (B) the Defendant resides in this District and/or has committed acts of infringement in this District and has a regular and established place of business in this District.

### Delta Defendants

36. This Court has personal jurisdiction over each Delta Defendant. Each Delta Defendant conducts business in, has committed acts of patent infringement in, has contributed to acts of patent infringement in, and/or has induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States. Also, each Delta Defendant has either (A) established minimum contacts with Texas, in accordance with due process and the Texas Long Arm Statute, such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice, or (B) pursuant to Fed. R. Civ. P.

4(k)(2), established minimum contacts with the United States as a whole, but not a single state, such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice.

37. On information and belief, the Delta Defendants conduct substantial business with entities and individuals in the State of Texas and the Eastern District of Texas by, among other things: (A) making, using, selling, offering to sell, and/or importing products that infringe the '734 Patent, both through their own infringing activities and those committed vicariously through and/or in concert with their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, which purposely avail the Delta Defendants of the privilege of conducting those activities in this state and this District; and (B) regularly doing or soliciting business in this District, providing service and support to their customers in this District, deriving substantial revenue from infringing goods offered for sale, sold, and imported in or to this District, and/or engaging in other persistent conduct targeting residents of Texas both through their own conduct and/or in concert with or through their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers. For example, Delta Electronics, Inc. is related to, owns, and/or controls consolidated subsidiaries that have a significant business presence in the United States and Texas and conduct activities through or in concert with these entities with respect to the accused products.

38. On information and belief, the Delta Defendants themselves, and/or through their subsidiaries, affiliates, and agents, have placed the accused Delta products into the stream of commerce throughout the State of Texas and/or in the Eastern District of Texas, including via Delta locations at, *e.g.*, 601 Data Drive, Plano, TX. On information and belief, these locations are regular, continuous, and established physical places of business of Delta that operate under the

Delta brand name and trademark and at the instructions, direction, and control of Delta Electronics, Inc.

39. Further, on information and belief, each of the Delta Defendants purposefully places infringing Delta products in established distribution channels in the stream of commerce by contracting with national retailers who sell Delta's products in the U.S., including in Texas. For example, Delta and its subsidiary Cyntec Co. Ltd. use national distributor Digikey as a domestic retailer of Delta power module products. *See Cyntec/Delta Electronics*, DigiKey, https://www.digikey.com/en/supplier-centers/cyntec (last visited Sept. 3, 2026). Delta does not typically permit the sale of its products outside of established and authorized networks. On information and belief, Delta Electronics, Inc., directly or through its subsidiaries and affiliates, contracts with these companies with the knowledge and expectation that the accused Delta products will be imported, distributed, advertised, offered for sale, sold, and/or serviced in the U.S. market and in Texas.

40. Through offers to sell, sales, importations, and/or related agreements with affiliates, distributors, and customers operating in and maintaining a significant business presence in the U.S. and/or via their subsidiaries maintaining such a presence, including via owned (directly or indirectly), consolidated, and controlled subsidiaries such as Delta Electronics (Americas) Ltd., the Delta Defendants conduct significant business in the United States, the State of Texas, and in this District.

41. Venue is proper in this District as to Delta Electronics, Inc., because it is a foreign entity and venue is proper in any judicial district.

42. Venue is proper in this District as to Delta Electronics (Americas) Ltd. because it has committed acts of infringement in the District and established a regular place of business in

the District by hiring employees to work in Plano. For example, Delta Electronics (Americas) Ltd. conducts business in Plano, Texas, including actively hiring on-site employees to work in Plano. https://www.linkedin.com/jobs/search/?currentJobId=4459057883&geoId=100517351&keywords=delta%20electronics&origin=JOB_SEARCH_PAGE_SEARCH_BUTTON&refresh=true (last visited Sept. 3, 2026). Such presence furthers the development, design, manufacture, importation, distribution, sale, and/or use of the infringing Delta products in Texas.

**Luxshare Defendants**

43. This Court has personal jurisdiction over each Luxshare Defendant. Each Luxshare Defendant conducts business in, has committed acts of patent infringement in, has contributed to acts of patent infringement in, and/or has induced others to commit acts of patent infringement in the State of Texas, and elsewhere in the United States. Also, each Luxshare Defendant has either (A) established minimum contacts with Texas, in accordance with due process and the Texas Long Arm Statute, such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice, or (B) pursuant to Fed. R. Civ. P. 4(k)(2), established minimum contacts with the United States as a whole, but not a single state, such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice.

44. The Luxshare Defendants conduct substantial business with entities and individuals in the State of Texas and the Eastern District of Texas by, among other things: (A) making, using, selling, offering to sell, and/or importing products that infringe the '734 Patent, both through their own infringing activities and those committed vicariously through and/or in concert with their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, which purposely avail the Luxshare Defendants of the privilege of conducting those activities in

this state and this District; and (B) regularly doing or soliciting business in this District, providing service and support to their customers in this District, deriving substantial revenue from infringing goods offered for sale, sold, and imported in or to this District, and/or engaging in other persistent conduct targeting residents of Texas both through their own conduct and/or in concert with or through their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

45. For example, both Luxshare Defendants provide worldwide customer support. Luxshare-Tech's website offers the opportunity to connect with Luxshare-Tech's global engineering and sales teams, noting that "Luxshare-Tech empowers partners worldwide … [b]acked by our Luxshare Group." *Contact Us*, Luxshare-Tech, [https://perma.cc/AR5R-EJSA]. There is an option to check a box on the contact form indicating that the potential customer is located in "US/Global," showing that Luxshare is servicing the U.S. market. *Id.* Plus, Luxshare-Tech attended the Open Compute Project Global Summit ("OCP Summit") in the United States in October 2025 to advertise its power products, including the accused products. Luxshare-ICT has a service branch in the United States to support United States customers. *See About Us*, Luxshare-ICT, [https://perma.cc/GU5J-RRXM].

46. Accordingly, each Luxshare Defendant places accused products into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that some will be sold in the State of Texas, including in this District.

47. On information and belief, the Luxshare Defendants do business themselves, and/or through their subsidiaries, affiliates, and agents, in the State of Texas and the Eastern District of Texas. Luxshare-ICT has a meaningful Texas presence. For example, Luxshare-ICT has a tech sales manager located in Lewisville, Texas, which is within the Eastern District of Texas. *See*

*Chase Ji*, LinkedIn, https://www.linkedin.com/in/chase-ji-0196a4128/ (last visited Sept. 3, 2026). Such presence and activities further the manufacture, use, sale, offers to sell, and/or importation of the infringing Luxshare products in the United States and Texas. Through their own conduct and their direction and control of their subsidiaries, affiliates, and/or partners, the Luxshare Defendants have committed acts of direct and/or indirect patent infringement within Texas, and/or elsewhere in the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over them would not offend traditional notions of fair play and substantial justice.

48. On information and belief, Luxshare makes, uses, offers to sell, sells, and/or imports in/into the State of Texas and the Eastern District of Texas certain vertical power delivery systems, components thereof, and/or computing systems containing the same that infringe the ’734 Patent, contributes to such patent infringement by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed, and/or induces others to commit acts of patent infringement in the State of Texas and the Eastern District of Texas, as described further herein.

49. Venue is proper in this District as to Luxshare-ICT because it is a non-resident foreign entity.

50. Venue is proper in this District as to Luxshare-Tech because it is a non-resident foreign entity.

**<u>Infineon Defendant</u>**

51. This Court has personal jurisdiction over Infineon because each Defendant conducts business in and has committed acts of patent infringement in this District, contributed to

acts of patent infringement in this District, and/or induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States and has established minimum contacts with this forum state such that the exercise of jurisdiction over Infineon would not offend the traditional notions of fair play and substantial justice.

52. On information and belief, Infineon conducts substantial business with entities and individuals in the State of Texas and the Eastern District of Texas by, among other things: (A) making, using, selling, offering to sell, and/or importing products that infringe the ’734 Patent, both through their own infringing activities and those committed vicariously through and/or in concert with their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, which purposely avail Infineon of the privilege of conducting those activities in this state and this District; and (B) regularly doing or soliciting business in this District, providing service and support to their customers in this District, deriving substantial revenue from infringing goods offered for sale, sold, and imported in or to this District, and/or engaging in other persistent conduct targeting residents of Texas both through its own conduct and/or in concert with or through its alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

53. Infineon Technologies AG is related to, owns, and/or controls consolidated subsidiaries that have a significant business presence in the United States and Texas and conduct activities through or in concert with these entities with respect to the accused products. For example, Infineon Technologies Americas Corp. conducts significant business activities at physical facilities in Texas, for example in Austin and Houston. *Our Locations*, Infineon Technologies AG, https://www.infineon.com/contact-us [https://perma.cc/W8A3-8CQG] (last visited June 9, 2026). Such presence furthers the research, development, design, manufacture,

importation, distribution, sale, and/or use of the infringing Infineon products in Texas.

54. Also, Infineon purposefully places infringing Infineon products in established distribution channels in the stream of commerce by contracting with national retailers who sell Infineon's products in the U.S., including in Texas. For example, Infineon uses national distributor Digikey as a domestic retailer of Infineon power module products. *See Infineon Technologies*, DigiKey, https://www.digikey.com/en/supplier-centers/infineon-technologies [https://perma.cc/B99J-XXA8] (last visited Sept. 5, 2026); *see also Manufacturers*, DigiKey, https://www.digikey.com/en/supplier-centers#C [https://perma.cc/P6Y6-K8ME] (last visited Sept. 5, 2026). On information and belief, Infineon Technologies AG, directly or through its subsidiaries and affiliates, contracts with these companies with the knowledge and expectation that the accused Infineon products will be imported, distributed, advertised, offered for sale, sold, and/or serviced in the U.S. market.

55. Accordingly, Infineon places the accused power converters into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that they will be sold in the State of Texas, including in this District, and does not otherwise permit the sale of the accused power modules and power systems and/or products containing the same in the State of Texas, or in this District, outside of these established, authorized, and ratified distribution channels and networks.

56. Venue is proper in this District as to Infineon Technologies AG because it is a foreign entity and venue is proper in any judicial district.

**<u>Quanta Defendants</u>**

57. This Court has personal jurisdiction over each Quanta Defendant because each Defendant conducts business in and has committed acts of patent infringement in this District,

contributed to acts of patent infringement in this District, and/or induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States and has established minimum contacts with this forum state such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice.

58. The Quanta Defendants conduct substantial business with entities and individuals in the State of Texas and the Eastern District of Texas by, among other things: (A) making, using, selling, offering to sell, and/or importing products that infringe the '734 Patent, both through their own infringing activities and those committed vicariously through and/or in concert with their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, which purposely avail the Quanta Defendants of the privilege of conducting those activities in this state and this District; and (B) regularly doing or soliciting business in this District, providing service and support to their customers in this District, deriving substantial revenue from infringing goods offered for sale, sold, and imported in or to this District, and/or engaging in other persistent conduct targeting residents of Texas both through their own conduct and/or in concert with or through their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

59. For example, Quanta Computer Inc. advertises the Accused Products through its subsidiary Quanta Cloud Technology Inc., which in turn identifies several established distribution channels to distribute, market, offer for sale, sell, and/or service infringing products directly to consumers in the United States. *See Where to Buy*, Quanta Cloud Technology, https://www.qct.io/wheretobuy/index (last visited Sept. 5, 2026).

60. On information and belief, the Quanta Defendants also purposefully place infringing Quanta products in established distribution channels in the stream of commerce by

contracting with national retailers who sell Quanta's products in the U.S., including in Texas and this District. On information and belief, the Quanta Defendants, directly or through their subsidiaries and affiliates, contract with these companies with the knowledge and expectation that Quanta products will be imported, distributed, advertised, offered for sale, sold, and/or serviced in the U.S. market.

61. Accordingly, each Quanta Defendant places the accused vertical power delivery systems, components thereof, and computing systems containing the same into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that they will be sold in the State of Texas, including in this District, and does not otherwise permit the sale of the accused power modules and power systems and/or products containing the same in the State of Texas, or in this District, outside of these established, authorized, and ratified distribution channels and networks.

62. Venue is proper in this District with respect to Quanta Computer Inc. and Quanta Cloud Technology Inc. because Quanta Computer Inc. and Quanta Cloud Technology Inc. are foreign entities and venue is proper in any judicial district.

**Celestica Defendant**

63. This Court has personal jurisdiction over Celestica. Celestica conducts business in, has committed acts of patent infringement in, has contributed to acts of patent infringement in, and/or has induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States. Also, Celestica has either (A) established minimum contacts with Texas, in accordance with due process and the Texas Long Arm Statute, such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice, or (B) pursuant to Fed. R. Civ. P. 4(k)(2), established minimum contacts with

the United States as a whole, but not a single state, such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice.

64. On information and belief, Celestica conducts substantial business with entities and individuals in the State of Texas and the Eastern District of Texas by, among other things: (A) making, using, selling, offering to sell, and/or importing products that infringe the ’734 Patent, both through their own infringing activities and those committed vicariously through and/or in concert with their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, which purposely avail Celestica of the privilege of conducting those activities in this state and this District; and (B) regularly doing or soliciting business in this District, providing service and support to its customers in this District, deriving substantial revenue from infringing goods offered for sale, sold, and imported in or to this District, and/or engaging in other persistent conduct targeting residents of Texas both through its own conduct and/or in concert with or through their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

65. For example, Celestica itself has, or is related to, owns, and/or controls subsidiaries that have a significant business presence in the United States and Texas and conduct activities through or in concert with these entities with respect to the accused products. Celestica has a location at 2791 Telecom Pkwy, Richardson, TX 75082, which is within the Eastern District of Texas. On information and belief, Celestica itself, and/or through its subsidiaries, affiliates, and agents, has placed the accused Celestica products into the stream of commerce throughout the State of Texas and/or in the Eastern District of Texas.

66. Venue is proper in this District as to Celestica, because it is a foreign entity and venue is proper in any judicial district. In the alternative, venue is proper because Celestica

maintains a regular, established place of business within this District at 2791 Telecom Pkwy, Richardson, TX 75082.

**Foxconn Defendants**

67. This Court has personal jurisdiction over each Foxconn Defendant because each Defendant conducts business in and has committed acts of patent infringement in this District, contributed to acts of patent infringement in this District, and/or induced others to commit acts of patent infringement in this District, the State of Texas, and elsewhere in the United States and has established minimum contacts with this forum state such that the exercise of jurisdiction over each Defendant would not offend the traditional notions of fair play and substantial justice.

68. The Foxconn Defendants conduct substantial business with entities and individuals in the State of Texas and the Eastern District of Texas by, among other things: (A) manufacturing, importing, offering to sell, distributing, and selling products that infringe the '734 Patent, both through their own infringing activities and those committed vicariously through and/or in concert with their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers, which purposely avail the Foxconn Defendants of the privilege of conducting those activities in this state and this District; and (B) regularly doing or soliciting business in this District, providing service and support to their customers in this District, deriving substantial revenue from infringing goods offered for sale, sold, and imported in or to this District, and/or engaging in other persistent conduct targeting residents of Texas both through their own conduct and/or in concert with or through their alter egos, intermediaries, agents, distributors, importers, customers, subsidiaries, and/or consumers.

69. For example, Hon Hai Precision Industry Co. Ltd., Foxconn Industrial Internet Co. Ltd., and Ingrasys Technology Inc. are related to, own, and/or control consolidated subsidiaries

(such as Hon Hai/Foxconn Logistics Texas LLC) that have a significant business presence in the United States and Texas and conduct activities through or in concert with these entities with respect to the accused products. Such presence and activities further the development, design, manufacture, importation, distribution, sale, and use of infringing Foxconn products in Texas. Through both their own conduct and their direction and control of their subsidiaries, affiliates, and partners, Hon Hai Precision Industry Co. Ltd., Foxconn Industrial Internet Co. Ltd., and Ingrasys Technology Inc. have committed acts of direct and/or indirect patent infringement within Texas, and elsewhere in the United States, giving rise to this action and/or have established minimum contacts with Texas such that personal jurisdiction over Hon Hai Precision Industry Co. Ltd., Foxconn Industrial Internet Co. Ltd., and Ingrasys Technology Inc. would not offend traditional notions of fair play and substantial justice.

70. On information and belief, the Foxconn Defendants also purposefully place infringing Foxconn products in established distribution channels in the stream of commerce by contracting with national retailers who sell Foxconn products in the U.S., including in Texas. On information and belief, the Foxconn Defendants, directly or through their subsidiaries and affiliates, contract with these companies with the knowledge and expectation that Foxconn products will be imported, distributed, advertised, offered for sale, sold, and/or serviced in the U.S. market.

71. Accordingly, each Foxconn Defendant places the accused power modules and power systems and/or products containing the same into the stream of commerce via authorized and established distribution channels with the knowledge and expectation that they will be sold in the State of Texas, including in this District, and does not otherwise permit the sale of the accused power modules and power systems and/or products containing the same in the State of Texas, or

in this District, outside of these established, authorized, and ratified distribution channels and networks.

72. Venue is proper in this District with respect to Hon Hai Precision Industry Co. Ltd., Foxconn Industrial Internet Co. Ltd., and Ingrasys Technology Inc. because Hon Hai Precision Industry Co. Ltd., Foxconn Industrial Internet Co. Ltd., and Ingrasys Technology Inc. are foreign entities and venue is proper in any judicial district.

## SINGLE ACTION

73. This suit is commenced against Defendants pursuant to 35 U.S.C. § 299 in a single action because (A) a right to relief is asserted against Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences relating to the making, using, importing into the United States, offering for sale, and/or selling of the same accused products or processes, and (B) questions of fact common to all Defendants will arise in the action.

74. Plaintiff is informed and believes, and on that basis alleges, that each named Defendant manufactures, imports, uses, offers for sale, and/or sells products and processes accused in this action that are part of the supply chain for the same end products for the same end buyer.

## THE ASSERTED PATENT

75. This action asserts causes of action for infringement of one or more claims of U.S. Patent No. 10,903,734 (“the ’734 Patent” or “the Asserted Patent”). U.S. Patent No. 10,903,734 is a valid and enforceable United States Patent. A true and correct copy of the Patent is attached as **Exhibit 1**.

76. The ’734 Patent, titled “Delivering Power to Semiconductor Loads,” issued on January 26, 2021, from U.S. Patent Application No. 16/218,418, filed on Dec. 12, 2018, which is

a Continuation - in - part of application No. 15 / 616,288, filed on June 7, 2017, now Pat. No. 10,277,105, which is a continuation - in - part of application No. 15/091,346, filed on Apr. 5, 2016, now Pat. No. 10,158,357.

77. Patrizio Vinciarelli is the named inventor of the ’734 Patent. The patent assignment record showing transfer of title of the ’734 Patent from Dr. Vinciarelli to Vicor Corporation is attached as **Exhibit 2**. Vicor owns by assignment the entire right, title, and interest in the ’734 Patent, including the sole and exclusive right to bring a claim for its infringement.

78. The ’734 Patent[1] relates to what is now known as Vertical Power Delivery or “VPD”. By stacking a “multi-cell converter” with a “Gearbox” including a capacitive layer, lateral translations, and inter-digitation, VPD reduces power distribution losses and enables superior current density, power density and efficiency. VPD overcomes the “last inch problem” of Lateral Power Delivery.

79. The below figure from the patent shows an exemplary 2x2 array of VPD modules as components of a VPD system for a Cerebras Wafer Scale Engine (“WSE”). The WSE is powered by an array of 84 modules, one for each of 84 reticles within the wafer. The WSE is fueled at up to 30,000A at 0.7V. Each VPD module resides above a WSE reticle. Power to each WSE reticle flows vertically from a 54V source at the top of the VPD module to the wafer reticle at its bottom. As shown in the figure, and disclosed in the ’734 Patent, the exemplary VPD modules comprise a multiplicity of layers, including a multi-cell converter and a Gearbox providing a capacitive layer, lateral connections, and inter-digitation.

[1] The Non-Technical Descriptions throughout the Complaint do not, and are not intended to, construe or limit the ’734 Patent’s scope or meaning.




FIG. 11

80. The patented technology has applications in high-performance computing, as well as in communications and network infrastructure that have extreme current density requirements, greater than 1A/mm2, provided by VPD. VPD enables AI and its growth trajectory because of the extreme current density demands of AI processing.

## FACTUAL ALLEGATIONS

81. No Defendant has any right to practice the intellectual property protected by the ’734 Patent.

82. Each of the Defendants, either directly or through their subsidiaries and affiliates, makes, uses, offers to sell, and/or sells within the United States[2], and/or imports into the United States certain vertical power delivery systems, components thereof, and/or computing systems

[2] As referred to in this Complaint, and consistent with 35 U.S.C. § 100(c), the “United States” means “the United States of America, its territories and possessions.”

containing the same that infringe the ’734 Patent (“Accused Products”).

83. Delta, Luxshare, and Infineon are module manufacturers that design and/or manufacture infringing VPD power modules. Separately, Delta also incorporates portions of Infineon’s silicon integrated power-stage solution called OptiMOS into Delta’s infringing VPD power modules.

84. Quanta, Celestica, and Foxconn are contract manufacturers that use Delta (incorporating Infineon power-stage solutions) and Luxshare VPD modules in their VPD systems.

85. On information and belief, each of the Defendants participates in the same overall supply chain: the supply chain for providing VPD solutions that Google uses for its Tensor Processing Units (TPUs).

86. Google TPUs are application-specific integrated circuits (ASICs) that perform artificial intelligence computing.

**COUNT I**

**INFRINGEMENT OF U.S. PATENT NO. 10,903,734**

87. Plaintiff repeats and incorporates by reference each preceding paragraph as if fully set forth herein and further states:

**Delta Defendants**

88. On information and belief, Delta makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, certain Accused Products, such as the Delta VPD modules, which directly infringe, literally and/or under the doctrine of the equivalents, at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the ’734 Patent in violation of 35 U.S.C. § 271(a). A non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 49, 53, 67, and 68 of the ’734 Patent to the Delta VPD module, including

photographs and drawings where applicable, is attached as **Exhibit 3**, with supporting materials available at **Exhibit 4**.

89. On information and belief, Delta also knowingly and intentionally induces infringement of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the '734 Patent in violation of 35 U.S.C. § 271(b). No later than as of the filing and service of this Complaint, Delta has had knowledge of the '734 Patent and the infringing nature of the accused Delta products. Despite this knowledge of the '734 Patent, Delta continues to actively encourage and instruct its customers and end users (for example, through its marketing, distribution of datasheets and technical product manuals to its customers, and technical support) to use the accused Delta products in ways that directly infringe the '734 Patent literally and/or under the doctrine of equivalents. Delta does so knowing and intending that its customers and end users will commit these infringing acts. Delta also continues to make, use, import, offer for sale, and/or sell the accused Delta products, despite its knowledge of the '734 Patent, thereby specifically intending for and inducing its customers to infringe the '734 Patent through the customers' normal and customary use of the accused Delta products.

90. On information and belief, Delta also contributorily infringes the '734 Patent in violation of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 in violation of 35 U.S.C. § 271(c) by making, using, selling, offering to sell within the United States, and/or importing into the United States vertical power delivery systems, components thereof, and computing systems containing the same that incorporate or constitute a material part of the inventions claimed by the '734 Patent. Delta does so knowing that these components are especially made or especially adapted for uses that infringe the '734 Patent, and are not staple articles or

commodities of commerce suitable for substantial non-infringing use.

91. Delta committed the foregoing infringing activities without license from Vicor.

92. Delta's acts of infringement have damaged Vicor, as owner of the '734 Patent. On information and belief, Delta has made nearly $1 billion dollars in revenue from sales of infringing VPD products since 2023. Vicor is entitled to recover from Delta the damages it has sustained as a result of Delta's wrongful acts and willful infringement in an amount subject to proof at trial. Delta's infringement of Vicor's rights under the '734 Patent will continue to damage Vicor.

**Luxshare Defendants**

93. On information and belief, Luxshare makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, certain Accused Products, such as the Luxshare VPD modules, which directly infringe, literally and/or under the doctrine of the equivalents, at least claims 1–8, 11–14, 40–45, 53, 67, 68, 81, 83, 84, 90 of the '734 Patent in violation of 35 U.S.C. § 271(a). A non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 53, 67, and 68 of the '734 Patent to the Luxshare VPD module, including photographs and drawings where applicable, is attached as **Exhibit 5**, with supporting materials available at **Exhibit 6**.

94. On information and belief, Luxshare also knowingly and intentionally induces infringement of at least claims 1–8, 11–14, 40–45, 53, 67, 68, 81, 83, 84, and 90 of the '734 Patent in violation of 35 U.S.C. § 271(b). No later than as of the filing and service of this Complaint, Luxshare has had knowledge of the '734 Patent and the infringing nature of the accused Luxshare products. Despite this knowledge of the '734 Patent, Luxshare continues to actively encourage and instruct its customers and end users (for example, through its marketing, distribution of datasheets and technical product manuals to its customers, and technical support) to use the accused Luxshare

products in ways that directly infringe the ’734 Patent literally and/or under the doctrine of equivalents. Luxshare does so knowing and intending that its customers and end users will commit these infringing acts. Luxshare also continues to make, use, import, offer for sale, and/or sell the accused Luxshare products, despite its knowledge of the ’734 Patent, thereby specifically intending for and inducing its customers to infringe the ’734 Patent through the customers’ normal and customary use of the accused Luxshare products.

95. On information and belief, Luxshare also contributorily infringes the ’734 Patent in violation of at least claims 1–8, 11–14, 40–45, 53, 67, 68, 81, 83, 84, and 90 in violation of 35 U.S.C. § 271(c) by making, using, selling, offering to sell within the United States, and/or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed by the ’734 Patent. Luxshare does so knowing that these components are especially made or especially adapted for uses that infringe the ’734 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

96. Luxshare committed the foregoing infringing activities without license from Vicor.

97. Luxshare’s acts of infringement have damaged Vicor, as owner of the ’734 Patent. Vicor is entitled to recover from Luxshare the damages it has sustained as a result of Luxshare’s wrongful acts in an amount subject to proof at trial. Luxshare’s infringement of Vicor’s rights under the ’734 Patent will continue to damage Vicor.

**Infineon Defendant**

98. On information and belief, Infineon makes, uses, offers to sell, and/or sells within the United States, and/or imports into the United States, certain Accused Products, such as the Infineon VPD module TDM24545S, which directly infringe, literally and/or under the doctrine of

the equivalents, at least claims 1, 2, 8, 40, 45, and 53 of the '734 Patent in violation of 35 U.S.C. § 271(a). A non-limiting and exemplary claim chart comparing independent claim 1 of the '734 Patent to the Infineon VPD module, including photographs and drawings where applicable, is attached as **Exhibit 7**, with supporting materials available at **Exhibit 8**.

99. On information and belief, Infineon also knowingly and intentionally induces infringement of at least claims 1, 2, 8, 40, 45, 53, 67, 68, 81, 83, 84, and 90 of the '734 Patent in violation of 35 U.S.C. § 271(b). No later than as of the filing and service of this Complaint, Infineon has had knowledge of the '734 Patent and the infringing nature of the accused Infineon products. Despite this knowledge of the '734 Patent, Infineon continues to actively encourage and instruct its customers and end users (for example, through its marketing, distribution of datasheets and technical product manuals to its customers, and technical support) to use the accused Infineon products in ways that directly infringe the '734 Patent literally and/or under the doctrine of equivalents. Infineon does so knowing and intending that its customers and end users will commit these infringing acts. Infineon also continues to make, use, import, offer for sale, and/or sell the accused Infineon products, despite its knowledge of the '734 Patent, thereby specifically intending for and inducing its customers to infringe the '734 Patent through the customers' normal and customary use of the accused Infineon products.

100. On information and belief, Infineon also contributorily infringes the '734 Patent in violation of at least claims 1, 2, 8, 40, 45, 53, 67, 68, 81, 83, 84, and 90 in violation of 35 U.S.C. § 271(c) by making, using, selling, offering to sell within the United States, and/or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed by the '734 Patent. Infineon does so knowing that these components are especially made or especially

adapted for uses that infringe the ’734 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

101. Infineon committed the foregoing infringing activities without license from Vicor.

102. Infineon’s acts of infringement have damaged Vicor, as owner of the ’734 Patent. Vicor is entitled to recover from Infineon the damages it has sustained as a result of Infineon’s wrongful acts in an amount subject to proof at trial. Infineon’s infringement of Vicor’s rights under the ’734 Patent will continue to damage Vicor.

**Quanta Defendants**

103. On information and belief, Quanta makes, uses, offers to sell, or sells within the United States, and/or imports into the United States certain vertical power delivery systems, components thereof, and computing systems containing the same, which directly infringe, literally and/or through the doctrine of equivalents, at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the ’734 Patent in violation of 35 U.S.C. § 271(a). Quanta sells vertical power delivery systems that include Defendants Delta and Luxshare’s infringing VPD modules, as well as vertical power delivery systems that include infringing VPD modules made by other entities, such as Monolithic Power Systems, Inc. and Flex Ltd.

104. A non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 53, 67, and 68 of the ’734 Patent to the Delta VPD modules, including photographs and drawings where applicable, is attached as **Exhibit 3**, with supporting materials at **Exhibit 4**; a non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 53, 67, and 68 of the ’734 Patent to the Luxshare VPD modules, including photographs and drawings where applicable, is attached as **Exhibit 5**, with supporting materials at **Exhibit 6**.

105. On information and belief, Quanta also knowingly and intentionally induces

infringement of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the ’734 Patent in violation of 35 U.S.C. § 271(b). No later than as of the filing and service of this Complaint, Quanta has had knowledge of the ’734 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’734 Patent, Quanta continues to actively encourage and instruct its customers and end users (for example, through its marketing, distribution of datasheets and technical product manuals to its customers, and technical support) to use the Accused Products in ways that directly infringe the ’734 Patent literally and/or under the doctrine of equivalents. Quanta does so knowing and intending that its customers and end users will commit these infringing acts. Quanta also continues to make, use, import, offer for sale, and/or sell the Accused Products, despite its knowledge of the ’734 Patent, thereby specifically intending for and inducing its customers to infringe the ’734 Patent through the customers’ normal and customary use of the Accused Products.

106. On information and belief, Quanta also contributorily infringes the ’734 Patent in violation of 35 U.S.C. § 271(c) by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed by the ’734 Patent in violation of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95. Quanta does so knowing that these components are especially made or especially adapted for uses that infringe the ’734 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

107. Quanta committed the foregoing infringing activities without license from Vicor. Quanta’s acts of infringement have damaged Vicor, as owner of the ’734 Patent. Vicor is entitled to recover from Quanta the damages it has sustained as a result of Quanta’s wrongful acts in an

amount subject to proof at trial. Quanta's infringement of Vicor's rights under the '734 Patent will continue to damage Vicor.

**<u>Celestica Defendant</u>**

108. On information and belief, Celestica makes, uses, offers to sell, or sells within the United States, and/or imports into the United States, certain vertical power delivery systems, components thereof, and computing systems containing the same, which directly infringe, literally and/or through the doctrine of equivalents, at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the '734 Patent in violation of 35 U.S.C. § 271(a). Celestica sells vertical power delivery systems that include Defendants Delta and Luxshare's infringing VPD modules, as well as vertical power delivery systems that include infringing VPD modules made by other entities, such as Monolithic Power Systems, Inc. and Flex Ltd.

109. A non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 53, 67, and 68 of the '734 Patent to the Delta VPD modules, including photographs and drawings where applicable, is attached as **Exhibit 3**, with supporting materials at **Exhibit 4**; a non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 53, 67, and 68 of the '734 Patent to the Luxshare VPD modules, including photographs and drawings where applicable, is attached as **Exhibit 5**, with supporting materials at **Exhibit 6**.

110. On information and belief, Celestica also knowingly and intentionally induces infringement of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the '734 Patent in violation of 35 U.S.C. § 271(b). No later than as of the filing and service of this Complaint, Celestica has had knowledge of the '734 Patent and the infringing nature of the Accused Products. Despite this knowledge of the '734 Patent, Celestica continues to actively encourage and instruct its customers and end users (for example, through its marketing,

distribution of datasheets and technical product manuals to its customers, and technical support) to use the Accused Products in ways that directly infringe the ’734 Patent literally and/or under the doctrine of equivalents. Celestica does so knowing and intending that its customers and end users will commit these infringing acts. Celestica also continues to make, use, import, offer for sale, and/or sell the Accused Products, despite its knowledge of the ’734 Patent, thereby specifically intending for and inducing its customers to infringe the ’734 Patent through the customers’ normal and customary use of the Accused Products.

111. On information and belief, Celestica also contributorily infringes the ’734 Patent in violation of 35 U.S.C. § 271(c) by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed by the ’734 Patent in violation of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95. Celestica does so knowing that these components are especially made or especially adapted for uses that infringe the ’734 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

112. Celestica committed the foregoing infringing activities without license from Vicor. Celestica’s acts of infringement have damaged Vicor, as owner of the ’734 Patent. Vicor is entitled to recover from Celestica the damages it has sustained as a result of Celestica’s wrongful acts in an amount subject to proof at trial. Celestica’s infringement of Vicor’s rights under the ’734 Patent will continue to damage Vicor.

**Foxconn Defendants**

113. On information and belief, Foxconn makes, uses, offers to sell, or sells within the United States, and/or imports into the United States, certain vertical power delivery systems,

components thereof, and computing systems containing the same, which directly infringe, literally and/or through the doctrine of equivalents, at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the ’734 Patent in violation of 35 U.S.C. § 271(a). Foxconn sells vertical power delivery systems that include Defendants Delta and Luxshare’s infringing VPD modules, as well as vertical power delivery systems that include infringing VPD modules made by other entities, such as Monolithic Power Systems, Inc. and Flex Ltd.

114. A non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 53, 67, and 68 of the ’734 Patent to the Delta VPD modules, including photographs and drawings where applicable, is attached as **Exhibit 3**, with supporting materials at **Exhibit 4**; a non-limiting and exemplary claim chart comparing independent claims 1, 2, 40, 45, 53, 67, and 68 of the ’734 Patent to the Luxshare VPD modules, including photographs and drawings where applicable, is attached as **Exhibit 5**, with supporting materials at **Exhibit 6**.

115. On information and belief, Foxconn also knowingly and intentionally induces infringement of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95 of the ’734 Patent in violation of 35 U.S.C. § 271(b). No later than as of the filing and service of this Complaint, Foxconn has had knowledge of the ’734 Patent and the infringing nature of the Accused Products. Despite this knowledge of the ’734 Patent, Foxconn continues to actively encourage and instruct its customers and end users (for example, through its marketing, distribution of datasheets and technical product manuals to its customers, and technical support) to use the Accused Products in ways that directly infringe the ’734 Patent literally and/or under the doctrine of equivalents. Foxconn does so knowing and intending that its customers and end users will commit these infringing acts. Foxconn also continues to make, use, import, offer for sale, and/or sell the Accused Products, despite its knowledge of the ’734 Patent, thereby specifically intending for and inducing

its customers to infringe the ’734 Patent through the customers’ normal and customary use of the Accused Products.

116. On information and belief, Foxconn also contributorily infringes the ’734 Patent in violation of 35 U.S.C. § 271(c) by making, using, selling, offering to sell within the United States, or importing into the United States vertical power delivery systems, components thereof, and/or computing systems containing the same that incorporate or constitute a material part of the inventions claimed by the ’734 Patent in violation of at least claims 1–8, 11–14, 18–26, 40–56, 65–71, 80, 81, 83, 84, 90–93, and 95. Foxconn does so knowing that these components are especially made or especially adapted for uses that infringe the ’734 Patent, and are not staple articles or commodities of commerce suitable for substantial non-infringing use.

117. Foxconn committed the foregoing infringing activities without license from Vicor. Foxconn’s acts of infringement have damaged Vicor, as owner of the ’734 Patent. Vicor is entitled to recover from Foxconn the damages it has sustained as a result of Foxconn’s wrongful acts in an amount subject to proof at trial. Foxconn’s infringement of Vicor’s rights under the ’734 Patent will continue to damage Vicor.

## DEMAND FOR JURY TRIAL

118. Plaintiff Vicor hereby demands a jury trial for all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Vicor requests entry of judgment in its favor and against Defendants as follows:

A. Declaring that the Defendants have each infringed United States Patent No. 10,903,734;

B. Awarding damages to Plaintiff pursuant to 35 U.S.C. § 284 in an amount no less than

a reasonable royalty for each Defendant's infringement of United States Patent No. 10,903,734, together with prejudgment and post-judgment interest and without limitation under 35 U.S.C. § 287, and in consideration of lost profits caused by Defendants' infringement (for example, on information and belief, Delta has made nearly $1 billion in revenue from sales of infringing products since 2023);

C. Declaring that the Defendants' infringement of United States Patent No. 10,903,734 has been willful and deliberate, at least from the filing of this Complaint, such that Vicor is entitled to treble damages;

D. Awarding injunctive relief precluding the Defendants from ongoing infringement of United States Patent No. 10,903,734, or, in the alternative, an ongoing royalty for each Defendant's continued infringement of United States Patent No. 10,903,734;

E. Awarding attorney's fees pursuant to 35 U.S.C. § 285 or as otherwise permitted by law; and

F. Awarding such other costs and further relief as the Court may deem just and proper.

Dated: September 8, 2026

Respectfully submitted,

*_/s/ Elizabeth L. DeRieux_*
Elizabeth L. DeRieux
Texas State Bar No. 05770585
ederieux@capshawlaw.com
S. Calvin Capshaw
Texas State Bar No. 03783900
ccapshaw@capshawlaw.com
CAPSHAW DERIEUX LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770

Oleg Elkhunovich
California Bar No. 269238
SUSMAN GODFREY LLP

1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
Email: vicorvpd-itc@susmangodfrey.com

Steven Seigel
Washington Bar No. 53960
Jenna Farleigh
Washington Bar No. 47392
Andres Healy
Washington Bar. No. 45578
Danielle Nicholson
Washington Bar No. 57873
Dinis Cheian*
New York Bar Registration No. 5958152
SUSMAN GODFREY LLP
401 Union Street, Suite 3000
Seattle, Washington 98101-3000
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
Email: vicorvpd-itc@susmangodfrey.com

Isabella Soparkar
Texas Bar No. 24150831
Jeff David
Texas Bar No. 24053171
SUSMAN GODFREY LLP
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
Email: vicorvpd-itc@susmangodfrey.com

Louis S. Mastriani*
DC Bar No. 386820
Lloyd Smith*
DC Bar No. 454606
Buchanan Ingersoll & Rooney PC
1700 K Street N.W., Suite 300
Washington, D.C. 20006-3807
Telephone: (202) 407-7900
Facsimile: (202) 452-7989
VICORII-ITC@bipc.com

*Counsel for Vicor Corporation*

**pro hac vice forthcoming*